**In re Anonymous No. 76 D.B. 82**

Disciplinary Board Docket No. 76 D.B. 82.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania,

LIEBER, *Member,* December 11, 1991—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits the following findings and recommendations with respect to the above petition for reinstatement.

## HISTORY OF PROCEEDINGS

Petitioner was disbarred on consent by order of the Supreme Court on December 3, 1982, effective January 2, 1983, following allegations that he had been guilty of professional misconduct involving the misappropriation of funds.

Petitioner is nearly 50 years old. He was admitted to the bar in 1976 and engaged in the public and private practice of law in [ ] County and [ ]. In 1982, as an approved title examiner and closing officer for [A] Co., petitioner misappropriated $42,500 from a settlement account. The money belonged to a seller's mortgage lender and was earmarked to discharge the mortgage lien on a sale which petitioner had handled.

Petitioner, who was an alcoholic, had diverted the $42,500 to pay his own personal debts. When [A] discovered the taking, it alerted petitioner's employer who, in turn, reported it to the president judge of [ ] County. Petitioner made full restitution, and [A] considered the matter closed. Petitioner's employer felt professionally bound to report the misconduct to Office of Disciplinary Counsel, which then issued a DB-7 letter dated September 20, 1982. On October 7, 1982, pe-

titioner submitted his resignation under Rule 215, Pa.R.D.E.

Petitioner filed a petition for reinstatement on February 5, 1990, more than five years from the effective date of disbarment. It is his first petition for reinstatement. A committee consisting of [    ], chairman, [    ], and [    ] was assigned to hear this matter. On May 26, 1990, petitioner requested leave to take oral depositions in [    ] where he currently lives. Hearing Committee [    ] convened on July 24, 1990, to consider petitioner's evidence, which included three depositions, three witnesses and his own testimony. Office of Disciplinary Counsel did not oppose the petition for reinstatement. Although the record was closed on July 24, 1990, it was reopened on September 12, 1990, to enable the parties to submit additional information with respect to an outstanding judgment against petitioner in the amount of $10,169.50. This judgment stemmed from a professional malpractice action filed against him soon after his disbarment. The record was closed again on November 30, 1990, and the parties both waived their rights to file post-hearing briefs.

The Hearing Committee evaluated petitioner's record according to the standard set forth in *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). It reviewed evidence of his misconduct, his subsequent employment, his alcohol addiction and recovery, and his prior and current competence to practice law. Finding that petitioner's misconduct had been substantially caused by his alcoholism, the committee concluded that petitioner had successfully met the requirements of Pa.R.D.E. 218 except for satisfying the malpractice judgment entered against him. Accordingly, the Hearing Committee recommended that the petition for reinstatement be granted conditionally pend-

ing satisfaction or payment of the outstanding judgment of $10,169.50.

On March 27, 1991, petitioner forwarded to the secretary of the Disciplinary Board a certificate of satisfaction issued by the prothonotary of the Court of Common Pleas of [ ] County for the full judgment which was the subject of the Hearing Committee's recommendation. The matter was then referred to the Disciplinary Board for consideration of the Hearing Committee's recommendation in favor of reinstatement. The board considered the petition for reinstatement at its April 10, 1991, meeting.

## FINDINGS OF FACT

A. The Disciplinary Board adopts the following findings of fact made by the Hearing Committee and supported by the evidence:

### *Procedural Matters*

(1) Petitioner [ ] was admitted to the practice of law in Pennsylvania on October 25, 1976.

(2) Petitioner [ ] possesses an undergraduate degree from the University of [ ] (1970) and a law degree from [ ] University (1976).

(3) On October 7, 1982, petitioner [ ] resigned as an attorney-at-law pursuant to Pa.R.D.E. 215.

(4) On December 2, 1982, the Supreme Court of Pennsylvania ordered disbarment of petitioner by consent, effective January 2, 1983.

(5) On February 5, 1990, petitioner [ ] filed the present petition for reinstatement pursuant to Pa.R.D.E. 218. This is the first petition for reinstatement filed by [petitioner], and more than five years have passed since his disbarment by consent.

(6) This petition for reinstatement was assigned to Hearing Committee [   ] on February 6, 1990.

(7) Petitioner [   ] applied on May 26, 1990, for leave to take oral depositions in [   ]. Permission was granted on May 31, 1990.

(8) On June 6, 1990, petitioner [   ] took three oral depositions in [   ]:  [B]; [C]; [D].

(9) A hearing was held before Hearing Committee [   ] on July 24, 1990.

(10) Petitioner [   ] appeared pro se and presented the evidence in support of his petition for reinstatement. He offered three exhibits into evidence and the oral depositions taken in [   ].  He called three witnesses, made a brief statement, and submitted to cross examination by assistant disciplinary counsel and to questioning by members of the committee.

(11) Assistant disciplinary counsel advised the committee that the Office of Disciplinary Counsel did not oppose the petition.

(12)  Assistant disciplinary counsel also informed the committee that it was the view of Office of Disciplinary Counsel, that the nature of the misconduct which led to petitioner['s] disbarment by consent in 1983 was not such that readmission to the practice of law would have a detrimental effect on the integrity and standing of the bar, or administration of justice, nor be subversive of the public interest.

(13)  At the conclusion of the hearing on July 24, 1990, the record was closed.

(14)  At the request of the Hearing Committee, the record was reopened on September 12, 1990, to enable Office of Disciplinary Counsel and petitioner [   ] to supply additional information to the committee with respect to an outstanding judgment ($10,169.50) against

petitioner arising from a legal malpractice action first filed against him in 1983.

(15) Office of Disciplinary Counsel submitted materials pertaining to the legal malpractice action together with a submission from petitioner [   ].

(16) The committee ordered the record closed on November 30, 1990.

(17) Both Office of Disciplinary Counsel and petitioner [    ] have waived their rights to file post-hearing briefs.

(18) The Hearing Committee filed its report and recommendation pursuant to Disciplinary Board Rule 89.171 and Pa.R.D.E. 218 on February 21, 1991.

### *Petitioner's Past Misconduct*

(19) In 1982, petitioner [   ] was employed in the law office of [E] in [   ] County.

(20) Petitioner [   ] was an approved title examiner and closing officer of [A] Title.

(21) Petitioner misappropriated $42,500 from a clearing or settlement account he maintained of money which belonged to a seller's mortgage lender, and which money was necessary to discharge the mortgage lien on a sale transaction of which petitioner had served as settlement officer.

(22) Petitioner diverted the $42,500 to his own purposes, his personal finances at the time being in a sorry state due to his alcoholism.

(23) [A] Title discovered the discrepancy and reported it to [E], petitioner's employer.

(24) [E] went to judge [F], then president judge in [   ] County.

(25) In meetings between Judge [F], [E], petitioner [   ] and [A] Title, it was agreed that petitioner [   ]

would repay the misappropriated monies, and [A] Title would consider the matter closed.

(26) Petitioner [ ] in fact repaid the misappropriated monies to [A] Title.

(27) [E] subsequently became of the view that he had an obligation to report petitioner['s] misconduct to the Office of Disciplinary Counsel and he did so.

(28) At the date [E] reported the misconduct to Office of Disciplinary Counsel, petitioner [ ] had already repaid the misappropriated funds and had reached a final settlement with [A] Title.

(29) The Hearing Committee agreed that petitioner's 1982 misconduct was not of such egregious nature that reinstatement to the practice of law would cause detriment to the standing and integrity of the bar, to the administration of justice, or be subversive of the public interest. The Hearing Committee noted in this regard two factors: petitioner [ ] had already made full restitution before the matter ever came to the attention of Office of Disciplinary Counsel; and petitioner's misconduct was substantially contributed to by alcoholism.

*Petitioner's Subsequent Employment*

(30) After his disbarment by consent in Pennsylvania, petitioner [ ] worked briefly doing title searches for [ ] County law firms.

(31) In 1984, petitioner [ ] decided to resume a career in banking and moved his family to [ ].

(32) Prior to his admission to practice law in Pennsylvania (1976), petitioner had worked for eight years for [G] Bank and had a background in mortgage lending and loan servicing.

(33) In [ ], petitioner [ ] was first employed as a vice-president, loan servicing, for [H] Mortgage Co. (September 1984-February 1986.)

(34) Petitioner was then employed as manager of systems and support of [I] Mortgage Co. (February 1986-September 1987.)

(35) Finally, petitioner became vice-president of lending for [J] Savings & Loan. (February 1986-present.)

(36) All of these positions in the banking industry have been positions of responsibility and trust, and have involved the handling of large sums of money.

(37) Petitioner's work performance in these banking positions has been competent and satisfactory. One of the witnesses deposed in [ ], [D], president of [J] Savings and Loan, testified as petitioner's direct superior. [D] testified that [petitioner] supervises approximately six employees, performs his work in a responsible and competent manner, and would be a credit to the legal profession.

*Petitioner's Alcoholism and Recovery*

(38) Petitioner [ ] established through clear and convincing evidence that he was an alcoholic from the late 1970s through mid-1988.

(39) Petitioner [ ] was hospitalized at [K] Hospital in [ ] for alcohol-induced hepatitis.

(40) By April 1988, according to the testimony of petitioner's wife, [L], petitioner's drinking had reached the point of jeopardizing his life.

(41) In April 1988, petitioner [ ] was admitted to [M] Hospital in [ ] with severe cirrhosis of the liver. His prognosis was guarded, and his physician

advised his wife that he might not survive three more months.

(42) [Petitioner's] wife introduced him to [B], an attorney in [   ] who was director of the Governor's Office of Recovery Services. [B] had himself been an alcoholic and often acted as a friend and counselor to fellow attorneys in the [   ] area with drinking problems.

(43) [B] followed and counseled with [petitioner] closely for a period of six months in 1988, and saw that [petitioner] was introduced to a local Alcoholics Anonymous chapter and that he attended meetings regularly.

(44) [B] testified that so long as petitioner [   ] maintains attendance with AA it is "highly unlikely that [petitioner] will ever drink again."

(45) At the AA chapter, petitioner [   ] was sponsored by one, [C], who also testified by deposition.

(46) [C] had met [petitioner] several years before 1988 when he worked at [H] Mortgage Co., but became his sponsor at the AA chapter in 1988. [C] like [B], testified to [petitioner's] regular attendance at AA meetings. Like [B], [C] agreed that if [petitioner] maintains the AA program, then he would not drink again: "It has been my experience that he [petitioner] has been sober for the past several years and I would imagine would remain so if he continues on the same program he is on today."

(47) Petitioner['s] wife, [L] testified: "I don't think you will ever drink again, because I think you want to live."

(48) The Hearing Committee found all of the witnesses who testified to petitioner['s] alcoholism and recovery to be credible.

(49) The Hearing Committee found that petitioner['s] misconduct in 1982 was in substantial part caused by the disorder in [petitioner's] life and financial affairs caused by alcoholism.

(50) The Hearing Committee found that petitioner [ ] has made an entirely laudable and successful effort to rescue his life from alcoholism, and that alcoholism will not cause petitioner [ ] to violate the standards of conduct required of attorneys.

## Competence To Practice Law

(51) Prior to his disbarment in January 1983, petitioner had practiced law in Pennsylvania in a notably competent manner.

(52) Attorney [N], public defender of [ ] County, testified that he had employed petitioner for two and one-half years as an assistant public defender and had found him competent to the point that the District Attorney's Office hired him away from the Public Defender's Office.

(53) Attorney [N] testified that he has no doubts of petitioner's competency and would be pleased to re-employ him as an assistant public defender if petitioner is readmitted.

(54) Attorney [O] of [ ] County also testified. [O] said that his firm had employed petitioner [ ] in the late 1970s, and when [O] became District Attorney in [ ] County in 1980, he arranged to have petitioner serve as assistant district attorney.

(55) [O] likewise testified that petitioner [ ] had practiced law in such competent fashion that law enforcement agencies would specifically request that petitioner [ ] handle their prosecutions.

(56) [O] also testified that he would be interested in re-employing [petitioner] if he is readmitted and returns to [ ] County. [O] testified that petitioner was "exceptionally competent" and has a "very unique aptitude for law."

(57) The Hearing Committee found both [N] and [O] to be entirely credible.

(58) Since his disbarment, petitioner [ ] has worked in a field—banking and mortgage loan administration—not too far removed from the practice of law. He has worked competently in that related field.

(59) In fall 1989, petitioner [ ] took the "Pennsylvania Basic Practice Course" at [ ] University.

(60) The Hearing Committee found on clear and convincing evidence that petitioner [ ] was competent when disbarred in January 1983, and that he will be competent if returned to the practice of law now.

### The [P] Malpractice Judgment

(61) In January 1983, the month in which petitioner [ ] was disbarred, he was named defendant in a civil action brought in the Court of Common Pleas of [ ] County by [ ] and [ ] [P]. [P] *et ux. v. [Petitioner]*, No. [ ] January 1983 A.D. (C.P. [ ]).

(62) In September 1981, petitioner [ ] had been retained to represent the [P] in an action brought against them in [ ] County by a contractor who claimed monies due for contract work. The [P] denied the debt, claiming that the work was deficient, and asked [petitioner] to file a counterclaim.

(63) Although he had agreed to defend the case and to assert a counterclaim, petitioner [ ] permitted the time to expire for filing a responsive pleading, and

the contractor took a default judgment against the [P] in the amount of $8,169.50.

(64) Accordingly, the [P] brought a legal malpractice action against [petitioner] alleging negligence.

(65) In 1986, petitioner [ ] consented to allow the [P] to enter judgment against him in the amount of $10,169.50.

(66) Petitioner [ ] made no effort to satisfy the [P] malpractice judgment until fall 1989, when he had decided to seek reinstatement in Pennsylvania.

(67) The [P], when contacted by [petitioner's] attorney, indicated they would accept approximately $5,500 in full satisfaction. [Petitioner], however, counteroffered $1,000-$1,500 in an initial payment, and the balance at $75 per month. The [P] did not accept this counteroffer.

B. The Disciplinary Board makes the following further findings of fact supported by the evidence:

(68) The Hearing Committee recommended that [petitioner's] petition for reinstatement be granted conditionally, and that the condition be that petitioner [ ], either by full payment or by agreement, obtain satisfaction of the legal malpractice judgment entered against him in the [P] *et ux. v. [Petitioner]* case in the amount of $10,169.50.

(69) On March 15, 1991, the prothonotary of the Court of Common Pleas of [ ] County issued a certificate of satisfaction for the judgment.

(70) On March 22, 1991, the secretary of the Disciplinary Board received a letter from petitioner [ ] dated March 18, 1991, advising that he had satisfied the condition contained in the report of Hearing Committee [ ] regarding the petition for reinstatement and enclosing the certificate of satisfaction.

## CONCLUSIONS OF LAW

A.  Petitioner [    ] has satisfied his burden under *Office of Disciplinary Counsel v. Keller* and Pa.R.D.E. 218 by establishing by clear and convincing evidence that:

(1)  The misconduct for which he was disbarred is not so egregious as to preclude consideration of this petition for reinstatement;

(2)  He possesses the moral qualifications and legal learning and competency necessary to practice law in Pennsylvania;

(3)  His resumption of practice will not be detrimental to the integrity of the bar or the administration of justice nor be subversive to the public interest.

B.  Petitioner [    ] is therefore entitled to reinstatement to the practice of law in Pennsylvania.

C.  Because petitioner [    ] has satisfied in full the outstanding judgment against him, his petition for reinstatement should be granted unconditionally.

## DISCUSSION

When a petitioner who has been disbarred seeks reinstatement to the bar of the Supreme Court of Pennsylvania, he must demonstrate by clear and convincing evidence that he possesses the moral qualifications and legal competency necessary to practice law in this jurisdiction. *In re Anonymous, No. 22 D.B. 76,* 50 D.&C.3d 289, 292 (1976). He must also establish that the resumption of his legal practice will not adversely affect the integrity of the bar or the administration of justice, nor be subversive to the public interest. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872, 875 (1986). These principles, known as the *Keller* test, constitute the controlling standard against

which all Pennsylvania petitions for reinstatement are measured. In this case, after reviewing the record before us, the Disciplinary Board agrees with the Hearing Committee's assessment that the *Keller* test has been satisfied.

The threshold question under *Keller* is whether the nature of the breach of trust was not so egregious as to bar the attorney permanently from resuming practice. In order to fairly evaluate the nature and potential harm of an attorney's misconduct, we consider several factors. *In re Anonymous, No. 46 D.B. 75*, 50 D.&C.3d 170, 180 (1987).

First we look to the number of years the attorney has been disbarred, on the presumption that the greater the number of years of disbarment—the greater the opportunity to reform. *Id.* at 180. Here, petitioner has not practiced law for more than five years. During those five years, however, he has been gainfully employed in a related field, i.e. banking and mortgage servicing. As evidence of his employment as a bank officer, petitioner offered in testimony the oral deposition of his current boss, [D]. [D] is president and chief executive officer of [J] Savings Association. He has been petitioner's superior since [petitioner] joined the bank in January of 1988. In his deposition, he testified that [petitioner] has worked in several responsible capacities relating to lending, including loan origination, rate setting, underwriting and approval authority. [Petitioner] has analyzed the bank's loan portfolio, prepared loans for sale, and negotiated the various sale transactions. [D] described [petitioner's] role in the above positions as "almost total responsibility" and stated that, despite petitioner's alcoholism, he has done "excellent work," is "direct and honest" and "has good

integrity." In his opinion, [petitioner] would be a "credit to the legal profession." *Id.*

Next we consider the nature of the offense committed by the attorney. 50 D.&C.3d at 180. In this case, petitioner misappropriated money, an offense which goes to the heart of the attorney-client relationship and which warrants the most severe sanction. *Keller,* 506 A.2d at 879; *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983). The record shows that [petitioner] has been so sanctioned. The record also shows that he made immediate restitution in full even before the original letter of allegations was sent by Office of Disciplinary Counsel. At the hearing, [petitioner] testified that the title company had indicated it was interested only in being made whole, and that he had believed the entire matter would be concluded upon his making restitution. He further testified that, during the course of the disciplinary proceedings, his former employer, [E], stated that he was not actually a complaining party to the disciplinary action but had reported [petitioner's] misconduct solely because he felt professionally obligated to do so under the ethical canons. Even Assistant Disciplinary Counsel [ ] conceded that the *Keller* threshold issue had been cleared by [petitioner's] prompt and full restitution.

Petitioner's struggle with chronic alcoholism must be factored into any consideration of his misconduct. There is no question on the record that [petitioner] was an alcoholic and that his condition causally contributed to his misconduct. [L], his wife for more than 25 years, testified that as far back as the 1970s, [petitioner's] drinking had affected their life. Occasionally, his drinking seemed to taper off somewhat, but as family and financial pressures mounted, his addiction became disruptive. Finally, after his drinking

got "really bad," he was hospitalized with hepatitis. At the time of the misappropriation, [petitioner] admittedly was several months behind in his mortgage payments and had run up other unpaid office-related expenses as well.

[Petitioner] has made a significant effort to rehabilitate his life. His commitment to change, however, did not take hold until 1988—when he became dangerously ill and accepted help. Since that time [petitioner] has actively participated in AA. He has also completed inpatient and outpatient programs at [M] Hall in [ ] and has abstained from liquor for more than three years. In addition, [petitioner] has consulted with a nutritionist, regained his physical health, and become a responsive father and husband. His two sobriety counselors, [B] and [C], testified in oral depositions that they believe [petitioner] has succeeded and deem it unlikely that he will start drinking again.

Finally, we must consider an attorney's legal skills and proficiency in evaluating whether he is competent to be reinstated. Pa.R.D.E. 203. Here, we note that [petitioner's] former legal employers both spoke highly of his professional abilities. In fact, both [N] and [O] expressed their respective willingness to hire [petitioner] were he to return to [ ] County. [Petitioner] submits that he has maintained his knowledge of the law by regularly reading various professional journals and legal periodicals and listening to audio tapes, particularly in the areas of banking and real estate law. He successfully completed the Pennsylvania Basic Practice Course at [ ] University (August 9-11, 1989).

In light of petitioner's clear and convincing evidence, attested to by character witnesses and submitted record,

the Disciplinary Board agrees with the findings of the Hearing Committee that petitioner has satisfied the requirements for reinstatement in Pennsylvania. We reach this conclusion guardedly and yet hopefully. While we recognize the laudable efforts petitioner has made to restore himself to health and to regain his equilibrium, we cannot help but also realize that these efforts will have to continue if he is to maintain his sobriety and resume his professional standing. We hope that petitioner can meet that challenge head-on so that he can make a positive contribution to the bar of Pennsylvania.

## RECOMMENDATION

Based on the foregoing findings and conclusions of law, the Disciplinary Board of the Supreme Court of Pennsylvania hereby respectfully recommends that this honorable court grant this petition for reinstatement and restore [petitioner] to the practice of law in the Commonwealth of Pennsylvania and pay costs pursuant to Rule 218(e), Pa.R.D.E.

Messrs. Eckell, Hill, Leonard and Sloane did not participate in the adjudication.

## ORDER

And now, December 11, 1991, upon consideration of the report and recommendations of the Disciplinary Board dated July 29, 1991, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.